# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEVI & KORSINSKY, LLP,<br><br>   1101 30th Street NW, Suite 115<br>   Washington, D.C. 20007,<br><br>              Plaintiff,<br><br>      v.<br><br>UNITED STATES SECURITIES AND<br>EXCHANGE COMMISSION,<br><br>   100 F Street NE<br>   Washington, D.C. 20549,<br><br>              Defendants. | Civil Action No. 19-cv-1409 |

## COMPLAINT FOR INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 USC § 552. Plaintiff Levi & Korsinsky, LLP ("Levi & Korsinsky") seeks injunctive and other appropriate relief to compel Defendant United States Securities and Exchange Commission ("SEC") to disclose records relating to the SEC's investigation into Elon Musk's Twitter activity and into Tesla Inc.'s ("Tesla") internal controls and procedures. The SEC has improperly withheld these records from Plaintiff.

## JURISDICTION AND VENUE

2. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552 (a)(4)(B). This court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 5 U.S.C. § 552 (a)(4)(B).

**PARTIES**

3. Plaintiff Levi & Korsinsky is a national law firm consisting of over 25 attorneys, with offices in Washington, DC, New York, NY, Stamford, CT, Los Angeles, CA, and San Francisco, CA. Its principal place of business is New York, NY. Plaintiff requested the withheld records from the SEC. Plaintiff is currently serving as lead counsel against Tesla, in the pending federal class action lawsuit styled *In re Tesla, Inc. Securities Litigation*, No. 18-cv-4865 (N.D. Cal., arising out of the same subject matter as Plaintiff's FOIA request.

4. Defendant SEC is a Department of the Executive Branch of the United States Government. The SEC is an agency within the meaning of 5 U.S.C. § 552(f).

**THE FREEDOM OF INFORMATION ACT**

5. The FOIA, 5 U.S.C. 552, requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

6. An agency must produce all responsive records except to the extent they, or any portion thereof, fall into one of nine specified exemptions. 5 U.S.C. 552(b).

7. Exemption 5 U.S.C. § 552(b)(7)(A) protects from disclosure records compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement activities.

8. When denying a request under exemption 5 U.S.C. § 552(b)(7)(A), "the agency asserting the exemption must state whether an investigation is in fact ongoing and how disclosure of documents would interfere with it . . . ." *Dugan v. DOJ*, 82 F. Supp. 3d 485, 499 (D.D.C. 2015).

9. However, exemption 5 U.S.C. § 552(b)(7)(A) "is temporal in nature and not designed to endlessly protect material simply because it is in an investigatory file." *CNN, Inc. v. FBI*, 293 F. Supp. 3d 59, 76 (D.D.C. 2018).

10. Therefore, after an investigation has concluded, exemption 5 U.S.C. § 552(b)(7)(A) no longer applies.

11. There is a two-step test to determine whether information is protected under exemption 5 U.S.C. § 552(b)(7)(A), whether: (1) a law enforcement proceeding is pending or

prospective, and (2) release of information about it could reasonably be expected to cause some articulable harm.

12. Here, the SEC failed to meet that test, and improperly withheld many of the requested documents on the basis that the documents fell under exemption 5 U.S.C. § 552(b)(7)(A).

## BACKGROUND FACTS

13. Musk co-founded Tesla and, at all relevant times, served as the company's Chief Executive Officer and Chairman. On August 7, 2018, at 12:48 p.m. ET, Musk tweeted the following message to over 22 million people: "Am considering taking Tesla private at $420. Funding secured." Musk continued to tweet and make statements about the potential transaction including tweeting about three hours later: "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote."

14. These statements and a later email published on August 13, 2018, created the impression to the public that it was virtually certain that Musk could take Tesla private at $420 per share, that funding for this multi-billion dollar transaction had been secured, and the only remaining contingency was a shareholder vote.

15. In fact, Musk had not even discussed, much less confirmed, key deal terms, including price, with any potential investor. There was no funding secured to take Tesla private at $420 per share or any other price. Musk had discussed taking Tesla private with Saudi Arabia's sovereign wealth fund (named the "Public Investment Fund"), but those discussions were extremely preliminary. They consisted of only exploring how the fund could be involved and did not result in any firm decision on whether the fund would increase its existing 5% stake in Tesla.

16. The statements were also false because Musk himself understood there was "a lot of uncertainty" surrounding the proposal and there were many contingencies that needed to be satisfied before any transaction could be approved by Tesla stockholders. Musk had not reached any agreement as to the price per share, had not determined how the going-private transaction would be structured, had not determined whether and to what extent current shareholders would

3

be in favor of the transaction or if Tesla's Board of Directors would even be in favor of having a shareholder vote, had not formally retained any advisors, and had not determined whether any regulatory approvals would need to be obtained for the transaction. Musk had also not reached any agreement concerning a significant contingency raised by the Public Investment Fund—building a Tesla production facility in the Middle East.

17. Musk knew of the uncertain and contingent nature of any going-private transaction for Tesla as well as the lack of any secured funding at $420 per share or at any other price. Yet Musk published his tweets and other statements anyway, disrupting the markets in Tesla securities such as stock and stock options, and causing billions of dollars of damage to Tesla investors.

18. On September 27, 2018, the SEC filed a complaint against Musk alleging violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (*United States Securitas and Exchange Commission v. Elon Musk*, Case No. 1:18-cv-8865). Two days later, on September 29, 2018, the SEC filed a complaint against Tesla alleging violations of Rule 13a-15 under the Securities Exchange Act of 1934 (*United States Securitas and Exchange Commission v. Tesla, Inc.*, Case No. 1:18-cv-8947).

19. On September 29, 2018, the SEC announced that it had reached a settlement with both Defendants. In a press release titled "Elon Musk Settles SEC Fraud Charges; Tesla Charged With and Resolves Securities Law Charge," the SEC described the terms of the settlements as follows:

> Washington D.C., Sept. 29, 2018 —
> The Securities and Exchange Commission announced today that Elon Musk, CEO and Chairman of Silicon Valley-based Tesla Inc., has agreed to settle the securities fraud charge brought by the SEC against him last week. The SEC also today charged Tesla with failing to have required disclosure controls and procedures relating to Musk's tweets, a charge that Tesla has agreed to settle. The settlements, which are subject to court approval, will result in comprehensive corporate governance and other reforms at Tesla—including Musk's removal as Chairman of the Tesla board—and the payment by Musk and Tesla of financial penalties.
>
> According to the SEC's complaint against him, Musk tweeted on August 7, 2018 that he could take Tesla private at $420 per share — a substantial premium to its trading price at the time — that funding for the transaction had been secured, and

that the only remaining uncertainty was a shareholder vote. The SEC's complaint alleged that, in truth, Musk knew that the potential transaction was uncertain and subject to numerous contingencies. Musk had not discussed specific deal terms, including price, with any potential financing partners, and his statements about the possible transaction lacked an adequate basis in fact. According to the SEC's complaint, Musk's misleading tweets caused Tesla's stock price to jump by over six percent on August 7, and led to significant market disruption.

According to the SEC's complaint against Tesla, despite notifying the market in 2013 that it intended to use Musk's Twitter account as a means of announcing material information about Tesla and encouraging investors to review Musk's tweets, Tesla had no disclosure controls or procedures in place to determine whether Musk's tweets contained information required to be disclosed in Tesla's SEC filings. Nor did it have sufficient processes in place to that Musk's tweets were accurate or complete.

Musk and Tesla have agreed to settle the charges against them without admitting or denying the SEC's allegations. Among other relief, the settlements require that:

- Musk will step down as Tesla's Chairman and be replaced by an independent Chairman. Musk will be ineligible to be re-elected Chairman for three years;
- Tesla will appoint a total of two new independent directors to its board;
- Tesla will establish a new committee of independent directors and put in place additional controls and procedures to oversee Musk's communications;
- Musk and Tesla will each pay a separate $20 million penalty. The $40 million in penalties will be distributed to harmed investors under a court-approved process.

"The total package of remedies and relief announced today are specifically designed to address the misconduct at issue by strengthening Tesla's corporate governance and oversight in order to protect investors," said Stephanie Avakian, Co-Director of the SEC's Enforcement Division.

"As a result of the settlement, Elon Musk will no longer be Chairman of Tesla, Tesla's board will adopt important reforms —including an obligation to oversee Musk's communications with investors—and both will pay financial penalties," added Steven Peikin, Co-Director of the SEC's Enforcement Division. "The resolution is intended to prevent further market disruption and harm to Tesla's shareholders."

The SEC's investigation was conducted by Walker Newell, Brent Smyth, and Barrett Atwood and supervised by Steven Buchholz, Erin Schneider, and Jina Choi in the San Francisco Regional Office and Cheryl Crumpton in the SEC's Home Office.

20. In connection with the SEC complaints, both Musk and Tesla consented to judgments being entered against them. On October 16, 2018, the United States District Court for the Southern District of New York entered a final judgment against Musk and Tesla. Under the terms of the judgment, Musk admits that the allegations in the SEC Complaint filed against him are true for certain legal proceedings.

21. The United States District Court for the Southern District of New York approved the settlements and the accompanying judgments and consents on October 16, 2018. Any appeal had to have been filed by November 15, 2018.

22. On April 30, 2019, Judge Alison J. Nathan entered an Order Amending Final Judgement as to Defendants.

23. Accordingly, the proceedings relating to Musk's tweets are now over.

## PLAINTIFF'S FOIA REQUEST RELATING TO MUSK AND DEFENDANT'S RESPONSES

24. On November 30, 2018, on behalf of shareholders of Tesla, Plaintiff submitted a FOIA request relating to the SEC's investigation and settlement agreement with Elon Musk, in connection with Musk's twitter activity between August 7, 2018, and August 13, 2018.

25. Plaintiff's FOIA request was designated by the SEC as Request No. 19-00684-FOIA.

26. Specifically, Plaintiff requested the following documents:

A. **The Investigation into Elon Musk's Twitter Activity**

This request seeks documents and communications related to the SEC's investigation into any "tweet" by Mr. Musk between August 1, 2018 and the present. This request includes but is not limited to a) subpoenas; b) wells notices; c) reports and orders relating to the decision to bring a formal investigation; d) transcripts of any testimony; and e) communications sent to and/or received by Mr. Musk.

B. **The Complaint filed by the SEC Against Elon Musk dated September 27, 2018.**

This request seeks the reports and orders concerning the decision to bring a formal SEC enforcement proceeding against Mr. Musk for the period of August 1, 2018 through the present.

### C. The Settlement Between the SEC and Elon Musk and Tesla, Inc.

On September 29, 2018, the Securities and Exchange Commission announced a settlement with Elon Musk. This request seeks copies of records relating to the decision to enter into the settlement. This request also seeks records memorializing how each SEC commissioner voted on the settlement and documents relating to the approval of the settlement.

27. On February 6, 2019, Mr. McInerney denied Plaintiff's FOIA request. Specifically, Mr. McInerney's letter denied Requests A) and C) under 5 U.S.C. § 552(b)(7)(A).

28. In response to item B), the SEC provided Plaintiff with a link containing the complaint filed by the SEC against Elon Musk dated September 27, 2018: https://www.sec.gov/litigation/complaints/2018/comp-pr2018-219.pdf

29. On February 7, 2019, Plaintiff appealed the SEC's decision that Requests A) and C) should be withheld under 5 U.S.C. § 552(b)(7)(A) and alleged the SEC had not satisfied its requirements responding to Request B). Plaintiff's FOIA Request No. 19-00684-FOIA was designated on appeal as No. 19-00195-APPS.

30. On February 28, 2019 the SEC denied in part and granted in part Plaintiff's appeal. The SEC confirmed the FOIA Officer's decision as to Request A), and determined that the link provided in response to Request B) was the only responsive document to Plaintiff's request.

31. However, when considering Request C), which the SEC noted included "records memorializing how each SEC commissioner voted on the settlement and documents related to the approval of the settlement," the SEC determined to discretionarily release the records memorializing how each Commissioner voted on the settlement.

32. Although the SEC has produced some of the requested documents, the SEC continues to withhold documents relating to the SEC's investigation into Musk's fraudulent tweets, and the SEC complaint and settlement, despite this proceeding being over.

33. Plaintiff has a right of access to the requested records under 5 U.S.C. §552 (a)(3)(A). The SEC has wrongfully withheld them because none fall within Exemption 7(A) or any other exemption. Exemption 7(A) is not applicable to the withheld documents—which by definition do not include any SEC-generated documents—because, among other things, the SEC's investigation into Musk's twitter activity relating to taking Tesla private is complete. Therefore, the release of at least of subset of them, could not reasonably be expected to interfere with law enforcement proceedings.

34. The SEC advised Plaintiff of Plaintiff's right to judicial review in this court in the letter dated February 28, 2019.

## PLAINTIFF'S FOIA REQUEST RELATING TO TESLA AND DEFENDANT'S RESPONSES

35. On November 30, 2018, on behalf of shareholders of Tesla, Plaintiff submitted a FOIA request relating to records regarding the SEC's investigation and settlement agreement with Tesla, Inc., resulting from Elon Musk's Twitter activity between August 7, 2018, and August 13, 2018.

36. Plaintiff's FOIA request was designated by the SEC as Request No. 19-00685-FOIA.

37. Specifically, Plaintiff's FOIA requested the following documents:

**A.    The Investigation into Tesla, Inc.'s Controls or Procedures**

This request seeks documents and communications related to the SEC's investigation into Tesla, Inc.'s failure to implement disclosure controls or procedures to assess whether information disseminated by Elon Musk was required to be disclosed in reports Tesla, Inc. files pursuant to the Securities Exchange Act of 1934 within the time periods specified in the Commission's rules and forms between August 1, 2018 and the present. This request includes but is not limited to a) subpoenas; b) wells notices; c) reports and orders relating to the decision to bring a formal investigation against Tesla, Inc.; d) transcripts of any testimony; and e) communications sent to and/or received by Tesla, Inc.

**B.    The Complaint filed by the SEC Against Tesla, Inc. dated September 29, 2018.**

This request seeks the reports and orders concerning the decision to bring a formal SEC enforcement proceeding against Mr. Musk for the period of August 1, 2018 through the present.

C. **The Settlement Between the SEC and Elon Musk and Tesla, Inc.**

On September 29, 2018, the Securities and Exchange Commission announced a settlement with Elon Musk. This request seeks copies of records relating to the decision to enter into the settlement. This request also seeks records memorializing how each SEC commissioner voted on the settlement and documents relating to the approval of the settlement.

38. On February 6, 2019, Mr. McInerney denied Plaintiff's FOIA request. Specifically, Mr. McInerney's letter denied Requests A) and C) under 5 U.S.C. § 552(b)(7)(A).

39. In response to item B), the SEC provided Plaintiff with a link containing the complaint filed by the SEC against Elon Musk dated September 27, 2018: https://www.sec.gov/litigation/complaints/2018/comp-pr2018-226.pdf

40. On February 7, 2019, Plaintiff appealed the SEC's decision that Requests A) and C) should be withheld under 5 U.S.C. § 552(b)(7)(A) and alleged the SEC had not satisfied its requirements responding to Request B). Plaintiff's FOIA Request No. 19-00685-FOIA was designated on appeal as No. 19-00196-APPS.

41. On February 28, 2019 the SEC denied in part and granted in part Plaintiff's appeal. The SEC confirmed the FOIA Officer's decision as to Request A) and portions of Request C), and determined that the link provided in response to Request B) was the only responsive document to Plaintiff's request.

42. However, when considering Request C), which the SEC noted included "records memorializing how each SEC commissioner voted on the settlement and documents related to the approval of the settlement," the SEC determined to discretionarily release the records memorializing how each Commissioner voted on the settlement.

43. Although the SEC has produced some of the requested documents, the SEC continues to withhold documents relating to the SEC's investigation into Tesla's internal controls and procedures, and the SEC complaint and settlement, despite this proceeding being over.

44. Plaintiff has a right of access to the requested records under 5 U.S.C. §552(a)(3)(A). The SEC has wrongfully withheld them because none fall within Exemption 7(A) or any other exemption. Exemption 7(A) is not applicable to the withheld documents—which by definition do not include any SEC-generated documents—because, among other things, the SEC's investigation into Tesla's internal controls and procedures surrounding Musk's twitter activity relating to taking Tesla private is complete. Therefore, the release of at least of subset of them, could not reasonably be expected to interfere with law enforcement proceedings.

45. The SEC advised Plaintiff of Plaintiff's right to judicial review in this court in the letter dated February 28, 2019.

## CLAIM FOR RELIEF

46. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47. Plaintiff has exhausted all administrative remedies to process its FOIA requests.

48. Defendant has wrongfully withheld the requested records from Plaintiff, in violation of 5 U.S.C. § 552. Further, even if any records fall within Exemption 7(A) or any other exemption, Defendant has failed to provide "[a]ny reasonably segregable portion" of those records as required by 5 U.S.C. § 552(b).

49. Plaintiff is entitled to injunctive and other appropriate relief with respect to the release and disclosure of the requested documents.

## REQUESTED RELIEF

Wherefore, Plaintiff prays that this Court:

A. order Defendant to disclose the requested records and make copies available to Plaintiff;

B. alternatively, if any records fall within any exemption, order Defendant to disclose portions of those records as required by 5 U.S.C. § 552(b);

C. provide for expeditious proceedings in this action;

D. award Plaintiff its costs and reasonable attorneys' fees incurred in this action under 5 U.S.C. § 552(a)(4)(E); and

E. grant such other relief as the Court may deem just and proper.

Dated: May 15, 2019                                  Respectfully submitted,

/s/ Nicholas I. Porritt
Nicholas I. Porritt (D.C. Bar 457611)
LEVI & KORSINSKY, LLP
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel.: (202) 524-4290
Fax: (202) 333-2121
Email: nporritt@zlk.com

*Attorneys for Plaintiff*